HOME     ONLINE SERVICES     COURT SERVICES     RECORDS     FEES

CLERK TO THE BOARD     USEFUL LINKS     HOW DO I....

# Leon County Clerk of the Circuit Court and Comptroller
## Court Case Search

Full Case View ⍰                                                    **Print Page**

| 37 2025 CA 001264 - INGRAM, ROBERT vs DELTA AIR LINES INC |
|---|

| Party Status | Party | Party Code | Attorney | Attorney Status |
|---|---|---|---|---|
| | DELTA AIR LINES INC , | DEFENDANT | PRO SE | ACTIVE |
| | INGRAM, ROBERT | PLAINTIFF | MARIE A MATTOX | ACTIVE |
| | INGRAM, ROBERT | PLAINTIFF | THOMAS L DICKENS | ACTIVE |

Top of Page

| Action Dscr | Open/Reopen Status | Open/Reopen Date | Disposition | Disposition Date | Judge |
|---|---|---|---|---|---|
| OTHER DISCRIMINATION | OPEN | 7/8/2025 | | | DEMPSEY |

Top of Page

| Charge # | Action Code | Description | Plea Date | Plea | Decision Date | Court Action | Charge Disposition | Citation |
|---|---|---|---|---|---|---|---|---|
| | | - | | | | | | |

Top of Page

| Judges Appearing on Case | | | |
|---|---|---|---|
| Last Name | First Name | Date Assigned | Source |
| DEMPSEY | ANGELA | 7/9/2025 12:04:46 PM | BM |

Top of Page

| **Viewing Option for Sensitive and Confidential Cases** | e-Certify |
|---|---|
| **Non-Viewable images in Court Cases Requiring Clerk Assistances** |  |

| Docket Table Headers Are Sortable. Click For Ascending, Again For Descending Order |
|---|
| Source Table Abbreviations: BM = Benchmark; JIS = Justice Informations System |

| Docket Date | CCISSeqNbr | Docket Code | ECertify | Docket Text | OR Book | OR Page | Source |
|---|---|---|---|---|---|---|---|
| 7/8/2025 | 2 | CCS PDF | ☐ «·Req $ | CIVIL COVER SHEET | | | BM |
| 7/8/2025 | 3 | COMP_CA PDF | ☐ «·Req $ | COMPLAINT | | | BM |
| 7/8/2025 | 4 | SUIS PDF | ☐ «·Req $ | SUMMONS ISSUED | | | BM |
| 7/8/2025 | 5 | RQPR PDF | ☐ «·Req $ | REQUEST FOR PRODUCTION | | | BM |
| 7/9/2025 | 1 | a002 | | JUDGE DEMPSEY, ANGELA C: ASSIGNED | | | BM |
| 7/9/2025 | 6 | RECEIPT PDF | ☐ «·Req $ | PAYMENT $410.00 RECEIPT #1859736 | | | BM |
| 7/9/2025 | 7 | UOCC PDF | | UNIFORM ORDER FOR ACTIVE, DIFFERENTIAL CIVIL CASE | | | BM |

| | | | | | | |
|---|---|---|---|---|---|---|
| 7/15/2025 | 8 | ROSE_ | ☐ ‹‹-*Req $* | MANAGEMENT E-NOTICED via email on 2025-07-09 RETURN OF SERVICE EXECUTED - DELTA AIR LINES INC. | | BM |
| 7/29/2025 | 9 | NAPR_ | ☐ ‹‹-*Req $* | NOTICE OF APPEARANCE OF THOMAS L. DICKENS, III AND DESIGNATION OF EMAIL ADDRESSES | | BM |

Top of Page

| Event | Date | Start | Location | Judge | Result | Source |
|---|---|---|---|---|---|---|

Top of Page

| Docket Application | Owed | Paid | Dismissed | Due |
|---|---|---|---|---|
| COMPLAINT | $400.00 | $400.00 | $0.00 | $0.00 |
| CIRCUIT CIVIL SUMMONS ISSUED | $10.00 | $10.00 | $0.00 | $0.00 |

Top of Page

| | | Ar Plan | | |
|---|---|---|---|---|
| Ordered Amt | Paid | Dismissed | Balance | Delinquent |

Top of Page

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

## I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>SECOND</u>    JUDICIAL CIRCUIT,
IN AND FOR <u>LEON</u>    COUNTY, FLORIDA

<u>ROBERT INGRAM</u>
Plaintiff

Case #  <u>2025 CA 001264</u>

Judge  _____

vs.

<u>DELTA AIR LINES INC.</u>
Defendant

## II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

## III.    TYPE OF CASE    (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
       ☐ Business governance
       ☐ Business torts
       ☐ Environmental/Toxic tort
       ☐ Third party indemnification
       ☐ Construction defect
       ☐ Mass tort
       ☐ Negligent security
       ☐ Nursing home negligence
       ☐ Premises liability—commercial
       ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
       ☐ Commercial foreclosure
       ☐ Homestead residential foreclosure
       ☐ Non-homestead residential foreclosure
       ☐ Other real property actions

☐ Professional malpractice
       ☐ Malpractice—business
       ☐ Malpractice—medical
       ☐ Malpractice—other professional
☒ Other
       ☐ Antitrust/Trade regulation
       ☐ Business transactions
       ☐ Constitutional challenge—statute or ordinance
       ☐ Constitutional challenge—proposed amendment
       ☐ Corporate trusts
       ☒ Discrimination—employment or other
       ☐ Insurance claims
       ☐ Intellectual property
       ☐ Libel/Slander
       ☐ Shareholder derivative action
       ☐ Securities litigation
       ☐ Trade secrets
       ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
  ☐ Residential Evictions
  ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV. REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☒ Punitive

**V. NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

 <u>1</u>

**VI. IS THIS CASE A CLASS ACTION LAWSUIT?**
 ☐ yes
 ☒ no

**VII. HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
 ☒ no
 ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII. IS JURY TRIAL DEMANDED IN COMPLAINT?**
 ☒ yes
 ☐ no

**IX. DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
 ☐ yes
 ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Marie A Mattox</u>    Fla. Bar # <u>739685</u>
    Attorney or party       (Bar # if attorney)

<u>Marie A Mattox  </u>    <u>07/08/2025</u>
 (type or print name)      Date

**IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT, IN AND
FOR LEON COUNTY, FLORIDA**

**ROBERT INGRAM,**

  **Plaintiff,**

**v.**

**DELTA AIR LINES INC.,**

  **Defendant.**

_____/

**CASE NO.:** 2025 CA 001264
**FLA BAR NO.:** 0739685

## COMPLAINT

  Plaintiff, ROBERT INGRAM, hereby sues Defendant, DELTA AIR LINES INC., and alleges:

## NATURE OF THE ACTION

  1.  This is an action brought under the Florida Civil Rights Act, codified at Chapter 760, Florida Statutes.

  2.  This action involves claims which are, individually, in excess of Fifty Thousand Dollars ($50,000.00), exclusive of costs and interest.

## THE PARTIES

  3.  At all times pertinent hereto, Plaintiff, ROBERT INGRAM, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to his race and actual and/or perceived disability, and he was retaliated against after reporting Defendant's unlawful employment practices.

  4.  At all times pertinent hereto, Defendant, DELTA AIR LINES INC., has been organized and existing under the laws of the State of Florida. At all times pertinent to this action,

Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5.      Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

6.      Plaintiff, a White male, began his employment with Defendant on or about November 8, 2021, and holds the position of Customer Service Agent.

7.      Plaintiff is a loyal and dedicated employee with a strong work ethic and dedication to his responsibilities. Plaintiff received ten different recognition cards thanking him for his hard work and dedication to the company.

8.      Despite his stellar work performance during his employment with Defendant, Plaintiff has been subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of his race and actual and/or perceived disability, and because he reported Defendant's unlawful employment activities and was subject to retaliation thereafter.

9.      The disparate treatment and retaliation came at the hands of specifically but not limited to Operations Service Manager Tina Lampkin-Rhodes, African American, Passenger Service Agent Tony Wilkins, African American, Station Manager Kimberly Rivers, African American, and Human Resources (HR) Representative Fernanda Samper, White.

10.     Plaintiff suffers from schizophrenia, depression, and anxiety and is a recovering addict who has maintained sobriety since October of 2018 which Defendant is aware of.

11.     Plaintiff is treated less favorably than his African American co-workers, concerning specifically but not limited to reprimands and Defendant's policies and procedures.

12.     On or around May 14, 2024, Plaintiff received his only reprimand and was written up for being on his cell phone at the counter by Lampkin-Rhodes. Immediately after the write-up, Lampkin-Rhodes walked to that same counter and proceeded to use her cell phone. Additionally, Plaintiff's supervisor, Wilkins, was known to nap in the break room regularly but was never reprimanded or asked to provide a written statement regarding his conduct.

13.     On or around July 20, 2024, Plaintiff submitted a request for FMLA leave, which was denied due to Lampkin-Rhodes' failure to respond to the request in a timely manner.

14.     From August 3, 2024, through August 5, 2024, Plaintiff took intermittent leave. During this time, Plaintiff called Defendant's callout line, Appletree, to report absences under FMLA and spoke with an Appletree representative. In a separate call with Lampkin-Rhodes, Plaintiff stated his need for a reasonable accommodation of sick leave. Plaintiff is not required to report absences to Lampkin-Rhodes under Defendant's callout policy.

15.     A member from Sedgwick subsequently reached out to Lampkin-Rhodes to ask how the absences were reported to Defendant through Appletree. Lampkin-Rhodes falsely stated that all three days were reported as Covid and didn't qualify under FMLA, which led to all three days being denied.

16.     On or around August 13, 2024, Plaintiff received documents from Sedgwick stating that his FMLA leave was denied.

17.     On or around August 15, 2024, Plaintiff stepped away from his station to call Sedgwick, who informed him that his absences had been reported as COVID-related by Lampkin-Rhodes. Plaintiff then approached Lampkin-Rhodes and asked to speak with her when she had a moment to discuss the matter. When he relayed Sedgwick's statement, Lampkin-Rhodes denied having reported the absences as COVID-related. Plaintiff then called Sedgwick again, this time

3

with Lampkin-Rhodes present, and during the call, Sedgwick confirmed that Lampkin-Rhodes had indeed reported the absences as COVID-related.

18.     Later that same day, Plaintiff attempted to meet with Lampkin-Rhodes and Rivers to address his FMLA concerns. However, Lampkin-Rhodes refused to participate and walked out of Rivers' office, while Rivers took no steps to investigate the issue. Later that day, during a follow-up meeting with both Lampkin-Rhodes and Rivers present, Lampkin-Rhodes shifted the focus away from Plaintiff's FMLA concerns and instead began criticizing his character, accusing him of sleeping on the job and being frequently absent from his post. Plaintiff clarified that the purpose of the meeting was not to discuss his character but rather to address Lampkin-Rhodes' prior statement to Sedgwick. In response, Lampkin-Rhodes stated she would send an email to Sedgwick correcting the information regarding his FMLA leave. However, no such email was ever sent. Despite this setback, Plaintiff later succeeded in getting his FMLA request approved on his own, without any assistance from Defendant.

19.     On or around August 17, 2024, Plaintiff accepted a transfer to a position in Raleigh, North Carolina to avoid any further mistreatment or retaliation. Plaintiff also spoke with Lampkin-Rhodes about the denial, she denied that she had changed the report to Covid.

20.     On August 18, 2024, Lampkin-Rhodes asked Plaintiff to write a statement regarding why he left his station at the ticket counter a few days prior (August 15, 2024). It is common practice for employees to leave the counter occasionally. Lampkin-Rhodes asked Plaintiff specifically to write the statement because she knew that he had stepped aside to talk to Sedgwick and wanted to get him in trouble in retaliation. To Plaintiff's knowledge, no other employee has been asked to write a statement for this reason. Plaintiff attempted to contact HR Samper regarding his mistreatment but received no response.

4

21.     On August 28, 2024, Plaintiff flew company business/Positive Space with permission from Delta admin in Raleigh to attend a fingerprint appointment for the position. Upon his return, Plaintiff was called into the office by Rivers, and in continued harassment, his integrity was brought into question as Lampkin-Rhodes did not believe Plaintiff had adequate permission to fly Positive Space, all in hopes of catching him in violation of policy. However, once Plaintiff forwarded her the email confirming his permission, the matter was dropped.

22.     Plaintiff had another upcoming appointment for training where he asked Lampkin-Rhodes directly if he had permission to fly with the company business and in further retaliation, his request was denied. However, employees, Customer Service Agent Jonothan McCommack, White, and Passenger Service Agent Carmen Hargrett, African American, transferred and/or flew with the company's business numerous times, and nothing was said to them.

23.     During this time, Plaintiff experienced an emotional reaction at work in response to the way he was being treated by Defendant. He had planned to travel to Budapest with his sister and a friend, but upon arriving at the airport, realized he had left his passport at home. After retrieving it, Plaintiff rushed back to the airport, and gate agent Wilkins was aware that he was en route. While Plaintiff was in the parking lot, he received a call from counter agent Rebecca Ferreira, who asked for his location. Plaintiff informed her that he was walking in, and she acknowledged this and stated she would notify the gate. After clearing security, Plaintiff heard an overhead announcement instructing him to return to the counter. Instead, he proceeded directly to the gate, only to find the boarding door closed and Wilkins standing there smiling, which Plaintiff perceived as a personal slight, given the history of mistreatment he had been enduring. The culmination of these events, including his inability to take approved FMLA leave and the

emotional distress of watching his sister and friend depart alone for an international trip that he had arranged and paid for, left Plaintiff feeling overwhelmed and emotionally distressed.

24.    Plaintiff walked to the break room where Lampkin-Rhodes and Rivers were preparing for a party. Despite seeing that Plaintiff was visibly upset, neither of the leaders attempted to offer assistance. Instead, Lampkin-Rhodes made provoking hostile statements that only worsened the situation. Plaintiff felt that neither leader showed any concern for his well-being and instead viewed the moment as an opportunity to continue harassment of him.

25.    On or around September 9, 2024, while Plaintiff was on approved FMLA leave, Lampkin-Rhodes improperly called him, asking him to come into the office for a meeting about a pending investigation from what she called his "emotional outburst". Plaintiff did not answer due to being out on approved FMLA leave. Later Rivers emailed the same request. Defendant intentionally called and emailed Plaintiff during his FMLA leave in an attempt to create problems for him.

26.    On or around September 12, 2024, Plaintiff was suspended without pay for allegedly having a "verbal outburst". Following this incident, Defendant also attempted to cancel Plaintiff's transfer to the Raleigh location. This action was particularly egregious, as Plaintiff's emotional breakdown was directly caused by Defendant's treatment, and the transfer had been requested specifically as an accommodation for his disability. During this period, another employee informed Plaintiff that Lampkin-Rhodes and Wilkins were spreading false rumors that Plaintiff was using drugs, further compounding the hostile environment and targeting he experienced.

27.    During this time, Plaintiff attempted to contact HR Samper numerous times and received no response. Plaintiff was reinstated in Defendant's system to active status on September

15, 2024, but due to the cancelation of his transfer, he was unable to work for over a month. Plaintiff even wrote an email complaint regarding the delay in administering his accommodation request.

28.    On October 4, 2024, Plaintiff officially began his position at Defendant's Raleigh location. Notably, he was forced to relocate from Tallahassee, Florida to Raleigh, North Carolina on his own, without any assistance or support from Defendant, which it provides to all employees.

29.    Since Plaintiff's transfer, Defendant has hired at least five additional African American employees. In contrast, several white employees, including McCommack and Jasen Fulghum, have transferred to other locations, due to the racial hostility.

30.    Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## RACE DISCRIMINATION

31.    Paragraphs 1 through 30 are realleged and incorporated herein by reference.

32.    This is an action against Defendant for discrimination based upon race brought under Chapter 760, Florida Statutes.

33.    Plaintiff has been the victim of discrimination on the basis of Plaintiff's race (white) in that Plaintiff was treated differently than similarly situated employees of Defendants who are black and has been subject to hostility and poor treatment on the basis, at least in part, of Plaintiff's race.

34.    Defendant is liable for the differential treatment and the hostile working environment Plaintiff was forced to endure because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and

7

inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.   Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

35.   Defendant's known allowance and ratification of these actions and inactions actions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

36.   In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the laws set forth herein.

37.   The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein lead, at least in part, to Plaintiff's termination on contrived allegations.

38.   Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of Chapter 760, Florida Statutes.

39.   As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief and punitive damages.

## COUNT II
## DISABILITY DISCRIMINATION

40.   Paragraphs 1 through 30 are realleged and incorporated herein by reference.

41.    This is an action against Defendant for disability discrimination brought under Chapter 760, Florida Statutes.

42.    Plaintiff has been the victim of discrimination on the basis of his disability or perceived disability. During the course of Plaintiff's employment with Defendant, he was treated differently than similarly situated nondisabled/perceived-as-disabled employees.

43.    Defendant is liable for the differential treatment and its refusal to accommodate Plaintiff, which adversely affected the terms and conditions of Plaintiff's employment with Defendant. Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

44.    In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/perceived-disability based and in violation of the laws set forth herein.

45.    The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to Plaintiff's termination.

46.    Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability or perceived disability or his record of having an impairment under Americans with Disabilities Act.

47.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These

9

damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief and to punitive damages.

**COUNT III**
**RETALIATION – Chapter 760**

48.    Paragraphs 1 through 30 are realleged and incorporated herein by reference.

49.    Defendant is an employer as that term is used under the applicable statutes referenced above.

50.    The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting Plaintiff under Chapter 760, Florida Statutes, and/or otherwise engaged in protected activity by requesting reasonable accommodation(s) for his disability.

51.    The foregoing unlawful actions by Defendant were purposeful.

52.    Plaintiff voiced opposition to unlawful employment practices during Plaintiff's employment with Defendant and was the victim of retaliation thereafter, as related in part above.

53.    Plaintiff is a member of a protected class because Plaintiff reported unlawful employment practices and was the victim of retaliation thereafter.  There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

54.    As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to punitive damages and to injunctive relief.

10

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)    that process issue and this Court take jurisdiction over this case;

(b)    that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)    enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)    enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)    enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)    award Plaintiff interest where appropriate; and

(g)    grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 8th day of July 2025.

Respectfully submitted,


/s/ Thomas L. Dickens, III
Thomas L. Dickens, III [FBN 63867]
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com
discovery@mattoxlaw.com


ATTORNEYS FOR PLAINTIFF

# IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT, IN AND FOR LEON COUNTY, FLORIDA

2025 CA 001264

**ROBERT INGRAM,**                                          **CASE NO.: 25-**
                                                            **FLA BAR NO.: 0739685**

        **Plaintiff,**

**v.**

**DELTA AIR LINES INC.,**                                   **SUMMONS**

        **Defendant.**

_____/

THE STATE OF FLORIDA:

To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on Defendant:

      **DELTA AIR LINES INC.,**
      **c/o CORPORATION SERVICE COMPANY – REGISTERED AGENT**
      **1201 HAYS STREET**
      **TALLAHASSEE, FL 32301-2525**

      Each defendant is required to serve written defenses to the complaint or petition on **Marie A. Mattox, P. A.**, Plaintiff's attorney, whose address is **203 North Gadsden Street, Tallahassee, FL 32301**, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court, either before serve on plaintiff's attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on _____, 2025.

CLERK OF THE CIRCUIT COURT

By: _____  07/09/2025

## IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
## IN AND FOR LEON COUNTY, FLORIDA

**ROBERT INGRAM,**

      **Plaintiff,**

v.

**DELTA AIR LINES, INC.,**

      **Defendant.**

_____/

**CASE NO.:** 2025 CA 001264

### PLAINTIFF'S FIRST REQUEST
### <u>FOR PRODUCTION OF DOCUMENTS TO DEFENDANT</u>

Plaintiff, pursuant to the Florida Rules of Civil Procedure, hereby requests that Defendant produce for inspection and copying all documents herein that are in its possession, custody, or control, or otherwise available.  This document production shall take place at the offices of **Marie A. Mattox, P.A., 203 North Gadsden Street, Tallahassee, Florida 32301**, or at such other place and time as may be mutually agreed upon by counsel for the parties within thirty days from service of this request or such earlier date as the parties may agree.

### DEFINITIONS AND INSTRUCTIONS

1.      The term "you" and "your" means the party or parties to whom this request is addressed, including its divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, attorneys, and all other persons acting or purporting to act on its behalf, as well as each partnership in which it is a partner.

2.      The term "person" means any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, group of natural persons or other business enterprise, governmental body, group of natural persons or the entity.

3.      The term "document" means any written or graphic matter or other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, correspondence, memoranda, notes, messages, letters, telegrams, teletype, telefax, bulletins,

meetings or other communications, interoffice and intraoffice telephone calls, diaries, chronological data, minutes, books, reports, studies, summaries, pamphlets, printed matter, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, cancelled checks, statements transcripts, statistics, surveys, magazine or newspaper articles, releases (and any and all drafts, alterations and modifications, changes and amendments of any of the foregoing,), graphic or aural records or representations of any kind (including, without limitation, photographic, microfiche, videotape, records and motion pictures) and electronic, mechanical or electrical records or representations of any kind (including, without limitation, tapes, cassettes, discs and records).

4.      The term "all documents" means every document or group of documents as above defined that are known to you or that can be located or discovered by reasonably diligent efforts.

5.      All requests herein seek the production of documents in the possession and/or control of Defendant.

6.      The time period covered by this request is November 1, 2021 through the present.

## **DOCUMENTS**

1.  The entire personnel, disciplinary, attendance and leave, medical, FMLA, Internal Affairs (IA), Inspector General (IG), investigative, supervisor and payroll files pertaining to Plaintiff, Operations Service Manager Tina Lampkin-Rhodes, Passenger Service Agent Tony Wilkins, Station Manager Kimberly Rivers, HR Representative Fernanda Samper, Customer Service Agent Jonothan McCommack, Passenger Service Agent Carmen Hargrett, and Jasen Fulghum  currently in Defendant's possession, custody, or control.

2.  All documents, including emails, text messages, internal communications, and memoranda, relating to Plaintiff's request for FMLA leave, including all communications between Defendant's employees and Sedgwick regarding Plaintiff's FMLA requests and status.

3.  All documents, including policies, procedures, and guidelines, relating to Defendant's cell phone usage policies and enforcement thereof from November 1, 2021, to present.

4.  All documents relating to disciplinary actions taken against any employees for cell phone usage or sleeping during work hours from November 1, 2021, to present.

5.  All documents relating to requests for transfers, including approvals and denials, for all Customer Service Agents and Passenger Service Agents from November 1, 2021, to present.

6.  All documents relating to complaints of discrimination, harassment, or retaliation made by any employee at the Tallahassee location from November 1, 2021, to present.

7.  All documents relating to Defendant's policies and procedures regarding positive space travel, including all communications regarding Plaintiff's requests for positive space travel.

8.  All documents relating to the investigation of Plaintiff's alleged "verbal outburst," including witness statements, investigative reports, and any resulting disciplinary actions.

9.  All documents relating to Plaintiff's suspension without pay, including the decision-making process and communications regarding the attempted cancellation of his transfer.

10. All hiring and promotion records for the Tallahassee location from November 1, 2021, to present, including demographic information of all applicants and hires.

11. All documents relating to accommodations requested or provided for employees with disabilities at the Tallahassee location from November 1, 2021, to present.

12. All documents relating to Defendant's policies and procedures regarding leave requests, including FMLA leave, and documentation of how these policies were applied to different employees.

13. All communications between Tina Lampkin-Rhodes, Tony Wilkins, Kimberly Rivers, and/or Fernanda Samper regarding Plaintiff from November 1, 2021, to present.

14. All recognition cards, commendations, or other documentation of positive performance for Plaintiff during his employment with Defendant.

15. All documents relating to Defendant's policies and procedures regarding transfers, including any communications regarding the processing of Plaintiff's transfer to Raleigh.

16. All attendance records, including documentation of approved and denied leave requests, for all Customer Service Agents at the Tallahassee location from November 1, 2021, to present.

17. All documents relating to any rumors or discussions regarding Plaintiff's alleged drug use, including any investigations or communications regarding such allegations.

18. All documents relating to requirements for employees to provide written statements regarding their conduct, including any instances where other employees were required to provide such statements from November 1, 2021, to present.

19. All documents relating to complaints made by Plaintiff to Human Resources, including any responses or actions taken in response to such complaints.

20. All documents relating to employee transfers from the Tallahassee location, including reasons for transfers, from November 1, 2021, to present.

21. All documents showing any investigation of Plaintiff's charge of discrimination and/or reports of discrimination and/or retaliation.

22. All documents showing all position reclassifications, promotions and/or salary increases that Defendant provided to any and/or all employees during the time period covered herein.

23. All documents showing each and every communication between Defendant's Human Resources office personnel and any other persons about and/or pertaining to Plaintiff.

24. All documents referring or relating to the subject matter of this action which have been furnished to or received by the Defendant's attorneys in connection with their defense of this action, except documents protected by a recognized privilege of non-production.

25. All transcripts, audio tapes, and video tapes (including depositions) obtained by Defendant involving Plaintiff, including, but not limited to, workers compensation hearings, conferences, grievance hearings, and Union grievances.

26. All documents Defendant provided to and/or the Defendant received from any third party to this action regarding Plaintiff.

27. Any diary, pocket calendar, desk calendar, journal, or other means of periodically recording materials or notes recorded or kept by any person currently or previously affiliated with the Defendant who supervised Plaintiff regarding Plaintiff.

28. Any and all documents that Defendant has identified to be used at trial other than as disclosed in Defendant's response to any foregoing requests.

29. All statements obtained by you and/or your attorneys, either recorded or written, at the time of or subsequent to the incidents alleged in the complaint filed therein.

30. Each and every document supporting Defendant's affirmative defenses.

31. All documents identified on Defendant's disclosure under Rule 26.

32. All documents supporting and/or pertaining to any criticism any supervisor of Plaintiff has had about Plaintiff and/or her work performance during the entire course of her employment with Defendant.

33. Defendant's complete investigative file regarding any and all complaints brought by any person against Plaintiff, including, but not limited to any memoranda or other written instructions initiating the investigation, any and all notes taken during the investigation (including interview notes), any report (whether final or preliminary) on the investigation, and if an attorney conducted the investigation, any document specifying the scope of the attorney's engagement.

34. The current resume or list of qualifications of any expert witness, advisor or consultant who has been retained by the Defendant in the above-entitled proceeding.

35. All reports, studies and/or commentaries, formal or informal, of any expert witness, consultant or advisor who has been retained by the Defendant in the above-entitled proceeding.

36. Any and all insurance policies that Defendant believe provide coverage for the incidents alleged against Defendant herein.

37. All declaration statements for all insurance policies that Defendant maintain should provide coverage for the incidents alleged against Defendant herein.

38. All declination and/or coverage defense letters received by Defendant and/or Defendant's counsel regarding the incidents alleged against Defendant herein.

39. All documents showing all evidence Defendant relied upon to in their determination to terminate Plaintiff.

40. A list of all documents which are being withheld from production by virtue of any privilege of non-production or for any other reason (this list should identify each document by its name, date, author, and recipient and specify the reason for withholding it from production). If there are documents responsive to any of the foregoing requests which refuse to produce, please define or designate the documents in your response with sufficient particularity to allow Plaintiff to make a motion for a court order to require production of these documents.

     **PLEASE TAKE NOTICE THAT** Plaintiff will object to the introduction at the trial of any document which is not produced in response to the foregoing requests and to any evidence about any requested document which has not been revealed by an appropriate response to this Request for Production of Documents.

                  Respectfully submitted,

                  /s/ Thomas L. Dickens, III
                  Thomas L. Dickens, III, Esq.
                  Florida Bar No.: 063867
                  MARIE A. MATTOX, P.A.
                  203 N. Gadsden Street
                  Tallahassee, FL 32301
                  Telephone: (850) 383-4800
                  Facsimile: (850) 383-4801
                  thomas.dickens@mattoxlaw.com
                  Secondary E-Mail:
                  linette.williams@mattoxlaw.com
                  michelle2@mattoxlaw.com (scheduling)

                  ATTORNEY FOR PLAINTIFF

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a copy of the foregoing has been furnished to Defendant by hand delivery pursuant to Fla. R. Civ. P. 1.350(b)(3).

<u>/s/ Thomas L. Dickens, III</u>
Thomas L. Dickens, III, Esq.



# LEON COUNTY Receipt of Transaction
## Receipt #    1859736

GWEN MARSHALL
Clerk of Court and Comptroller
LEON COUNTY, FLORIDA

**Received From:**
Marie A. Mattox P.A.

,

**On Behalf Of:**

On: 7/9/2025  12:04:53PM
Transaction # 101157756
Cashiered by: L WILLIAMS

,

CaseNumber  2025 CA 001264

Judge  ANGELA C DEMPSEY

ROBERT INGRAM  *VS*  DELTA AIR LINES INC.

Comments:

| Fee Description | Fee | Prior Paid | Waived | Due | Paid | Balance |
|---|---|---|---|---|---|---|
| (COMP_CA) COMPLAINT | 400.00 | 0.00 | 0.00 | 400.00 | 400.00 | 0.00 |
| (CASUIS) CIRCUIT CIVIL SUMMONS ISSUED | 10.00 | 0.00 | 0.00 | 10.00 | 10.00 | 0.00 |
| **Total:** | **410.00** | **0.00** | **0.00** | **410.00** | **410.00** | **0.00** |
| **Grand Total:** | **410.00** | **0.00** | **0.00** | **410.00** | **410.00** | **0.00** |

**PAYMENTS**

| Payment Type | Reference | | Amount | Refund | Overage | Change | Net Amount |
|---|---|---|---|---|---|---|---|
| CREDIT CARD EFILE | 226838547 | OK | 410.00 | 0.00 | 0.00 | 0.00 | 410.00 |
| | | **Payments Total:** | **410.00** | **0.00** | **0.00** | **0.00** | **410.00** |

IN THE SECOND JUDICIAL CIRCUIT IN AND FOR LEON COUNTY, FLORIDA

**ROBERT  INGRAM**

     Plaintiff

vs                                CASE NO.: 2025 CA 001264

  **DELTA AIR LINES INC**

     Defendant
_____/

## <u>UNIFORM ORDER FOR ACTIVE, DIFFERENTIAL CIVIL CASE MANAGEMENT</u>

In compliance with the Florida Rules of Civil Procedure (amendments effective January 1, 2025), and Second Judicial Circuit Administrative Order 2024-08, all parties in the above-styled cause are bound by this Case Management Order.

**Plaintiff shall serve this order on all parties with service of the original complaint. Strict enforcement is required unless good cause is shown for an exception or as otherwise required by law.**

### I.  Projected Trial Date

All COUNTY COURT Civil cases are designated STREAMLINED CASES with a projected trial date of 360 days from the date of filing of the complaint.

All CIRCUIT COURT Civil cases for which the complaint does not demand trial by jury are designated STREAMLINED CASES with a projected trial date of 360 days from the date of filing of the complaint.

All CIRCUIT COURT Civil cases for which the complaint demands trial by jury are GENERAL CASES with a projected trial date of 540 days from the date of filing of the complaint.

A change in the above designations may be made by the presiding judge on the judge's own initiative or upon the motion of any party. Should any party assert that a civil case should be treated other than as designated above, such party shall file a written motion requesting such change, and the motion shall be expeditiously resolved by the presiding judge.

## II. Setting Action for Trial

The failure of the pleadings to be closed will not preclude the court from setting a case for trial (See Rule 1.440). If the court finds an action ready to be set for trial on a party's motion or on the court's own initiative, the court will enter a Trial Order pursuant to Rule 1.440. Motions to Continue Trial are disfavored. Any Motions to Continue Trial must comply with Rule 1.460.

## III. Mandatory Deadlines for Streamlined Cases

If the case is designated as a STREAMLINED CASE, the following deadlines shall apply and, by directive of the Florida Supreme Court, must be strictly enforced unless good cause is shown for an exception or as otherwise required by law:

1. 120 days after filing: Service of Complaints
2. 150 days after filing: Service under any Extension of Time 180 days after filing: Adding New Parties, and filing of any objections to pleadings
3. 210 days after filing: Resolution of Objections to Pleadings and Motions to Dismiss
4. 270 days after filing: Completion of Fact and Expert Discovery, and filing of all Pretrial motions
5. 300 days after filing: Resolution of Pretrial Motions, including Motions for Summary Judgment

## IV.  Mandatory Deadlines for General Cases

If this case is designated as a GENERAL CASE, the following deadlines shall apply and, by directive of the Florida Supreme Court, must be strictly enforced unless good cause is shown for an exception or as otherwise required by law:

1. 120 days after filing: Service of Complaints
2. 180 days after filing: Service under any Extension of Time 210 days after filing: Adding New Parties, and filing of any objections to pleadings
3. 270 days after filing: Resolution of Objections to Pleadings and Motions to Dismiss
4. 400 days after filing: Completion of Fact and Expert Discovery, and filing of all Pretrial motions
5. 470 days after filing: Resolution of Pretrial Motions, including Motions for Summary Judgment and mediation

## V.  Conferral Requirements and Mediation

All parties must comply with the conferral requirements detailed in Rule 1.202. All parties must mediate unless excused by court order for good cause shown or as otherwise required by law and in compliance with Florida Rules of Civil Procedure, Rules 1.700 - 1.730

## VI.  Noncompliance

**By Order of the Florida Supreme Court, strict, good faith compliance with this Uniform Order for Active, Differential Civil Case Management is required unless good cause is shown for an exception or as otherwise required by law. These procedures and time standards do not supplant any existing rule, statute, law, or the sound discretion of the court.**

**Failure to appear at a case management conference, the pretrial conference or failure to comply with the new civil rules or terms of this order may result in such sanctions as are just and lawful including: an immediate ex parte hearing and entry of final judgment of default or dismissal, limitation of witnesses or other evidence, striking of claims or defenses, or imposition of attorney fees or costs. See Florida Rules of Civil Procedure, Rules 1.200(j) and (k), 1.280(k), and 1.380.**

## VII. Hearings by Audio-Video Technology

Each judge is responsible for establishing a process for conducting hearings by audio-video technology.

Wednesday, July 9, 2025
ANGELA C DEMPSEY CIRCUIT JUDGE

ANGELA C DEMPSEY
Circuit Judge

# VERIFIED RETURN OF SERVICE

Job # T252443

**Client Info:**

MARIE MATTOX, PA
MARIE MATTOX
203 NORTH GADSDEN STREET
Tallahassee, FL  32301

**Case Info:**

| | |
|---|---|
| **PLAINTIFF:** | CIRCUIT COURT |
| ROBERT INGRAM | |
| -versus- | County of Leon, Florida |
| **DEFENDANT:** | Court Case # **2025 CA 001264** |
| DELTA AIR LINES INC. | |

**Service Info:**

Received by KATHRYN VILLA: on July, 14th 2025 at 09:45 AM
**Service:** I Served **DELTA AIR LINES INC. c/o CORPORATION SERVICE COMPANY-REGISTERED AGENT**
With: **SUMMONS; COMPLAINT; UNIFORM ORDER; REQUEST FOR PRODUCTION OF DOCUMENTS**
by leaving with **MONALISA HART, AUTHORIZED TO ACCEPT FOR R.A. COMPANY**

At Business 1201 HAYS STREET TALLAHASSEE, FL 32301
On **7/14/2025** at **01:25 PM**
**Manner of Service: CORPORATE**
CORPORATE SERVICE: F.S. 48.081 (1)(a)(b)(c)(d), (2) or (3)

I **KATHRYN VILLA** acknowledge that I am 18 years or older, authorized to serve process, in good standing in the jurisdiction wherein the process was served, and I have no interest in the above action. Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true.

_Kathryn Villa_

_____
KATHRYN VILLA
Lic # **286**

**ACCURATE SERVE OF TALLAHASSEE**
400 CAPITAL CIRCLE SE STE 18291
Tallahassee, FL 32301
Phone: (850) 519-5494

Our Job # **T252443**    Client Ref # **INGRAM**




## IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT, IN AND FOR LEON COUNTY, FLORIDA

2025 CA 001264

**ROBERT INGRAM,**                      **CASE NO.: 25-**
                                        **FLA BAR NO.: 0739685**

     **Plaintiff,**

**v.**

**DELTA AIR LINES INC.,**                      **SUMMONS**

     **Defendant.**

_____/

THE STATE OF FLORIDA:

To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on Defendant:

     **DELTA AIR LINES INC.,**
     **c/o CORPORATION SERVICE COMPANY – REGISTERED AGENT**
     **1201 HAYS STREET**
     **TALLAHASSEE, FL 32301-2525**

     Each defendant is required to serve written defenses to the complaint or petition on **Marie A. Mattox, P. A.,** Plaintiff's attorney, whose address is **203 North Gadsden Street, Tallahassee, FL 32301,** within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court, either before serve on plaintiff's attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

     DATED on _____, 2025.

     CLERK OF THE CIRCUIT COURT

     By: _____  07/09/2025

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT, IN AND FOR LEON COUNTY, FLORIDA**

**ROBERT INGRAM,**

      **Plaintiff,**                           **CASE NO.: 2025-CA-001264**

**v.**

**DELTA AIR LINES INC.,**

      **Defendants,**

_____/

### NOTICE OF APPEARANCE OF THOMAS L. DICKENS, III AND DESIGNATION OF EMAIL ADDRESSES

Please take notice that Thomas L. Dickens, III now appears as additional counsel for Plaintiff and requests addition to the Florida E-filing Portal and other service lists. The undersigned requests that all future communications and correspondence be directed to him.

The undersigned designates the following email addresses, pursuant to Florida Rule of Judicial Administration 2.516, for service of all documents required to be served in this proceeding:

Primary E-Mail Addresses:    thomas.dickens@mattoxlaw.com

Secondary E-Mail Address:    linette.williams@mattoxlaw.com

                                      michelle2@mattoxlaw.com (scheduling)

                                      discovery@mattoxlaw.com

*THIS SPACE WAS LEFT BLANK INTENTIONALLY*

Respectfully submitted,

*/s/ Thomas L. Dickens, III*
Thomas L. Dickens, III, Esq.
Florida Bar No.: 063867
MARIE A. MATTOX, P.A.
203 N. Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
thomas.dickens@mattoxlaw.com
Secondary E-Mail:
linette.williams@mattoxlaw.com
michelle2@mattoxlaw.com (scheduling)

ATTORNEY FOR PLAINTIFF


## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been furnished this 29th day of

July 2025 by Florida e-filing service only to all counsel of record.


*/s/ Thomas L. Dickens, III*
Thomas L. Dickens, III, Esq.